UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RENEE KEENE,

        Plaintiff,

v.                                      Case No:  2:17-cv-586-FtM-38CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION[1]

    Plaintiff Renee Keene seeks judicial review of the denial of her claims for disability and disability insurance benefits ("DIB") by the Commissioner of the Social Security Administration ("Commissioner").   The Court has reviewed the record, the Joint Memorandum (Doc. 23)[2] and the applicable law.   For the reasons discussed below, the Court recommends the decision of the Commissioner be reversed.

---

[1]  A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

[2]  Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites.   These hyperlinks are provided only for users' convenience.   Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.   By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve or guarantee any third parties or the services or products they provide on their websites.   Likewise, the Court has no agreements with any of these third parties or their websites.   The Court accepts no responsibility for the availability or functionality of any hyperlink.   Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

## I.      Issues on Appeal[3]

Plaintiff raises five issues on appeal:[4] (1) whether the Appeals Council erred in failing to consider new evidence submitted after the Administrative Law Judge's ("ALJ") decision; (2) whether substantial evidence supports the ALJ's finding that Plaintiff did not suffer from one or more severe mental impairments; (3) whether substantial evidence supports the ALJ's residual functional capacity ("RFC") finding; (4) whether the ALJ improperly evaded the grid rules by finding Plaintiff could perform light work; and (5) whether substantial evidence supports the ALJ's finding that Plaintiff could perform a significant number of jobs in the national economy.

## II.      Summary of the ALJ's Decision

On February 10, 2015, Plaintiff filed an application for a period of disability and DIB, alleging her disability began on September 1, 2014 due to bipolar disorder, post-traumatic stress disorder ("PTSD"), injured shoulder, nerve compression and sciatica.  Tr. 108-09, 226-27.  Plaintiff's claims were denied initially on July 21, 2015 and upon reconsideration on December 7, 2015.  Tr. 107, 156-60.  On February 4, 2016, Plaintiff requested a hearing before an ALJ.  Tr. 163-64.  ALJ Hope Grunberg held a hearing on September 12, 2016, and on September 21, 2016

---

[3] Any issue not raised by Plaintiff on appeal is deemed to be waived.  *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

[4] For clarity and judicial efficiency, the Court will address the issues in a different order than the Joint Memorandum.

the ALJ found Plaintiff was not disabled from September 1, 2014 through the date of the decision.   Tr. 23-60, 131-41.

At step one, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 1, 2019 and had not engaged in substantial gainful activity since the alleged onset date of September 1, 2014.   Tr. 132.   Next, at step two, the ALJ found Plaintiff had severe impairments of cervical and lumbar degenerative disc disease and degenerative joint disease of the right shoulder.   *Id.* The ALJ also found Plaintiff's medically determinable mental impairments of bipolar disorder and anxiety "do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere."   Tr. 133.   At step three, the ALJ concluded Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]"   Tr. 134.   The ALJ determined Plaintiff had the RFC to perform light work[5] with certain exertional and non-exertional limitations.   Tr. 135.   At step four, the ALJ determined Plaintiff

---

[5] The regulations define light work as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.   If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

was unable to perform past relevant work.   Tr. 135-39.   Finally, at step five, the ALJ determined there were a significant number of jobs in the national economy Plaintiff could perform.   Tr. 139.   Thus, the ALJ concluded Plaintiff was not disabled from September 1, 2014 through the date of the decision.   Tr. 140.   Plaintiff requested review of the ALJ's decision on November 15, 2016.   Tr. 224.   The Appeals Council denied Plaintiff's request for review, and Plaintiff subsequently filed a Complaint with this Court.   Tr. 1-3; Doc. 1.

### III.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).[6]   Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

"In determining whether substantial evidence supports a decision, we give

---

[6] After the ALJ issued the decision, certain Social Security rulings and regulations relevant to the ALJ's decision were amended, such as the regulations concerning the evaluation of mental impairments.   *See e.g.*, 20 C.F.R. § 404.1520a; SSR 16-3p, 2017 WL 5180304.   The Court will apply rules and regulations in effect at the time of the ALJ's decision.   *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 C.F.R. § 404.1527 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

great deference to the ALJ's factfindings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## IV.   Discussion

### a.   *New evidence submitted to the Appeals Council*

"[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Although the Appeals Council has the discretion not to review the ALJ's denial of benefits, it "must consider new, material, and chronologically relevant evidence" that the claimant submits. *Ingram,* 496 F.3d at 1261; *see* 20 C.F.R. § 404.970(b);[7] *Washington v. Soc. Sec.*

---

[7] The Commissioner revised the regulation governing Appeals Council review and submission of new evidence in December 2016. *See* 20 C.F.R. § 404.970 (effective Jan. 17, 2017); Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process, 81 Fed. Reg. 90987-01 (Dec. 16, 2016). The revised regulation became effective January 17, 2017, but the Commissioner did not require claimants to comply until May 1, 2017. *See* 81 Fed. Reg. 90987-01. The revised regulation

*Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015).   New evidence is chronologically relevant if "it relates to the period on or before the date of the hearing decision." 20 C.F.R. § 404.970(b).   Evidence is material when it is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986) (citation omitted); *see* 42 U.S.C. § 405(g).   Whether evidence submitted to the Appeals Council "is new, material, and chronologically relevant is reviewed *de novo*" by the district court.   *Yates v. Comm'r of Soc. Sec.*, 706 F. App'x 588, 594 (11th Cir. 2017) (citing *Washington*, 806 F.3d at 1320–21).   "[W]hen the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate."   *Id.* (citing *Washington*, 806 F.3d at 1321).

The Court will apply the version of 20 C.F.R. § 404.970 in effect at the time of Plaintiff's request for review of the ALJ's decision, November 15, 2016.   *See Thick v. Comm'r of Soc. Sec.*, No. 2:18-CV-10154, 2018 WL 6683348, at *14 (E.D. Mich. Nov. 29, 2018) (applying version of 20 C.F.R. § 404.970 in effect when the plaintiff requested the Appeals Council review the ALJ's decision), *report and recommendation adopted by* 2018 WL 6650305 (E.D. Mich. Dec. 19, 2018); *Truong v. Berryhill*, No. 17-cv-02179-BEN, 2018 WL 6198279, at *3 (S.D. Cal. Nov. 28, 2018) (same), *report and recommendation adopted by* 2018 WL 6603872 (S.D. Cal. Dec. 17,

---

added a requirement that a claimant must show "good cause" for not submitting new evidence earlier.   *See* 20 C.F.R. § 404.970(b).

2018); *cf. Hargress*, 883 F.3d at 1308; *Bowen*, 488 U.S. at 208; 20 C.F.R. § 404.1527 (effective March 27, 2017).[8]

Here, after the ALJ's decision, Plaintiff submitted new evidence to the Appeals Council consisting of medical records dated August 31, 2015 to September 7, 2016 from Plaintiff's treating psychiatrist, Michael Kilchenstein, M.D.   Tr. 2, 61-106, 293. The records included a treating source mental status report dated November 28, 2015,[9] which noted that Plaintiff presented with flatness of affect and her thinking was "minimal."   Tr. 66-68.   Dr. Kilchenstein stated Plaintiff was focused on being taken care of, has shown no ability to do adult chores herself, and that her family provides food, transportation, medical care and shelter for her.   Tr. 67.   He further noted Plaintiff could not subtract 7 from 100, and as the day goes on she is less and less able to perform activities of daily living.   *Id.*   Dr. Kilchenstein diagnosed Plaintiff with schizophrenia and opined she eventually may improve with tranquilizers but was, at that time, severely impaired and incapable of sustaining work activity for a normal work day.   Tr. 67-68.

---

[8] Here, the Appeals Council "expressly advised" Plaintiff it would find good cause for the untimely submission of any additional evidence because her "case was pending at the Appeals Council before [its] rule about when to give [it] evidence became effective[.]"   Tr. 9; *see Truong*, 2018 WL 6198279 at *3.   The Commissioner does not contest whether Plaintiff showed good cause for submitting the additional evidence after the hearing.   *See* Doc. 23 at 17-18.

[9] The Commissioner originally solicited the mental status report from Dr. Kilchenstein on October 29, 2015, but apparently never associated the report with Plaintiff's file.   *See* Tr. 66-68, 293; Doc. 23 at 12.   Plaintiff's counsel received the remaining records on September 21, 2016, the date of the ALJ's decision.   *See* Tr. 293.   On September 14, 2016, Plaintiff requested until September 23, 2016 to submit the records to the ALJ, but the record does not show whether the ALJ acted on that request.   *See* Tr. 22.

The treatment notes include detailed notes from visits on August 13, 2015,[10] October 6, 2015, and November 23, 2015, along with listings of Plaintiff's prescriptions. *See* Tr. 61-106.   On August 13, 2015, Plaintiff reported she was a "rape and incest survivor"[11] and goes to counseling.   Tr. 75.   On October 6, 2015, Dr. Kilchenstein noted that Plaintiff wanted disability benefits for her bipolar disorder and was having constant "gruesome" thoughts of being raped that were becoming "more vivid[.]"   Tr. 78.   Finally, on November 23, 2015, Dr. Kilchenstein noted that Plaintiff reported she felt "nervous" and "closer to death" and that "morning is less scary than other times of the day."   Tr. 63.   She further reported she had "hallucinations" and suicidal thoughts that were "frequent but less severe" since starting her medications, and she could remember nothing.   Tr. 64.   Dr. Kilchenstein noted that Plaintiff was a business owner and massage therapist for 28 years but stopped after "it got too overwhelming . . . dealing with people" and due to her shoulder pain.   Tr. 65.   The Appeals Council refused to consider or exhibit the evidence, explaining in the Notice of Appeals Council Action:

> You submitted medical records from Dr. Michael Kilchenstein dated August 31, 2015 to September 7, 2016 (46 pages).   We find this evidence

---

[10]  Four pages of Dr. Kilchenstein's notes from August 13, 2015 appear to have been made part of the record previously.   *Compare* Tr. 74-77 *with* Tr. 353-56.   The remainder of the evidence submitted to the Appeals Council was not previously in the record.

[11]  This statement is consistent with other statements in the record, including those of an examining psychologist noting a history of sexual abuse related to Plaintiff's stepfather abusing her as a 4-year-old and Plaintiff's statements in her application for benefits that she was raped on multiple occasions by different individuals when she was between the ages of 12 and 16.   Tr. 265-67, 432.   Plaintiff also reported these specific instances to Dr. Kilchenstein.   *See* Tr. 75-77.   Plaintiff explains in her application she believes the trauma from these events caused her PTSD and bipolar disorder, which make her "unable to function in a workplace[.]"   Tr. 266.

does not show a reasonable probability that it would change the outcome of the decision.   We did not consider and exhibit this evidence.

Tr. 2.

Plaintiff argues the Appeals Council erred in failing to consider the evidence because it was "new, material, and related to the period before the ALJ's decision and there was a reasonable probability that it would change the outcome of the decision." Doc. 23 at 11.   Plaintiff argues the evidence was new because it had not been included in Plaintiff's file; it was material because it related to Plaintiff's mental impairments; and it related to the period before the ALJ's decision because the status report was issued ten months prior to the decision, and the rest of the records pre-date the decision.   *Id.* at 12.   Finally, Plaintiff argues the additional evidence had a reasonable probability of changing the outcome because the ALJ found Plaintiff had no severe mental impairment or combination of impairments, and the status report states that due to her mental impairments Plaintiff is incapable of working.   *Id.* at 12-13.   Plaintiff argues if the ALJ could assess and weigh Dr. Kilchenstein's opinions, she may have found Plaintiff's mental impairments severe and that Plaintiff was disabled.   *Id.*   Thus, Plaintiff argues substantial evidence did not support the Appeals Council's finding that the new evidence showed no reasonable probability that it would change the outcome.

The Commissioner responds that the Appeals Council properly refused to consider the new evidence and had to do no more than state its reason for declining to consider the evidence.   *Id.* at 17-18.   The Commissioner argues that the evidence had no reasonable probability of changing the decision because it contradicted the

other medical records submitted to the ALJ and Plaintiff's testimony that her medical conditions were stable with medication.   *Id.* at 18.   Finally, the Commissioner asserts Dr. Kilchenstein's statements that Plaintiff is impaired or unable to work are not medical opinions but instead are administrative findings reserved to the Commissioner.   *Id.* at 19.

The Court recommends the Appeals Council committed reversible error in failing to consider and exhibit the new evidence and in denying review of the ALJ's decision.   In a factually similar case decided in 2011, *Langley v. Astrue*, a district court in Alabama found the Appeals Council committed legal error by denying review based on new evidence submitted after the hearing.   777 F. Supp. 2d 1250, 1261-64 (N.D. Ala. 2011).   In that case, the new evidence consisted of treatment notes from the plaintiff's treating psychiatrist spanning approximately a 21 month-period.   *Id.* at 1261-62.   The notes included diagnoses of depression and post traumatic stress disorder.   *Id.*   The ALJ, without the benefit of this evidence, found that the plaintiff's mental impairment was nonsevere at step two and included no mental restrictions in his RFC finding.   *Id.* at 1263-64.   The court held the new evidence showed the ALJ's finding as to severity of the plaintiff's mental impairments was against the weight of the evidence and the Appeals Council erred in denying review and remanded the case to the Commissioner to reconsider the plaintiff's claim in light of the new evidence.   *Id.* at 1264.   Similarly here, the new evidence Plaintiff submitted consists of treatment notes from a treating psychiatrist spanning approximately a 13-month period and a treating source mental status report from

before the date of the ALJ's decision.   Tr. 61-106; *see Langley*, 777 F. Supp. 2d at 1261-62.   Also, like in *Langley*, without the benefit of the new evidence, the ALJ found Plaintiff's mental impairments were nonsevere.[12]   Tr. 133; *see* 777 F. Supp. 2d at 1263-64.

Further, the additional evidence here is new, material, related to the time period before the ALJ's decision, and shows a reasonable probability that it would change the ALJ's decision.   *See* 20 C.F.R. § 404.970(b); *Caulder*, 791 F.2d at 877. The evidence is new because it was not part of the administrative record at the time of the ALJ's decision and not considered by the ALJ, and it is related to the period of time before the ALJ's decision on September 21, 2016.   *See Ingram,* 496 F.3d at 1261. The evidence is material because there is a reasonable probability it could change the ALJ's decision.   The ALJ's analysis of Plaintiff's mental impairments focused mostly on Plaintiff's subjective complaints and the findings of the State agency psychological consultant, Lawrence Annis, Ph.D, dated November 23, 2015.   Tr. 133; *see* Tr. 118-19.   Dr. Annis found that Plaintiff had nonsevere impairments in the areas of affective disorders and anxiety disorders and that she had mild limitations in the paragraph B[13] criteria.   Tr. 118-19.   The ALJ did not, however, have the benefit of

---

[12]  The ALJ included mental limitations in her RFC finding, namely, that "[d]ue to the combination of her symptoms and medication side effects, the claimant is limited to understanding, remembering, and carrying out simple and routine tasks."   Tr. 135.   In her step two analysis, however, the ALJ implied that any mental limitations she included are "related to [Plaintiff's] physical complaints of pain rather than any mental impairment." *See* Tr. 133.   The ALJ also failed to discuss or analyze the mental limitations in making her RFC finding.

[13]  The paragraph B criteria include separate evaluations on a four-point scale of how the claimant's mental impairment impacts four function areas: "activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation."   20

evidence from any treating psychiatrist or any psychiatrist at all—the only relevant evidence in the record was from Dr. Annis and a few notes from psychologist Harry Miranda, Psy.D.[14]   *See* Tr. 118-19, 425-444.   The evidence from Dr. Kilchenstein provides detailed medical findings about Plaintiff's mental health and daily functioning, including a treating medical source statement, and an additional diagnosis of schizophrenia that the ALJ did not have the opportunity to consider. *See* Tr. 61-106.

The Court recommends the case be remanded because the Appeals Council erred in denying review as there is a reasonable probability the new evidence would change the ALJ's decision regarding the severity of Plaintiff's mental impairments and whether Plaintiff was disabled.   *See Langley*, 777 F. Supp. 2d at 1261-64; *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 746-47 (11th Cir. 2011); *Washington*, 806 F.3d at 1320-24; *Hernandez v. Barnhart*, 203 F. Supp. 2d 1341, 1356 (S.D. Fla. 2002) (finding a reasonable probability new evidence would change the ALJ's decision where the evidence consisted of a treating medical source statement from an examining physician).

### b.  *Step two determination*

A medically determinable physical or mental impairment is one that "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 1382c(a)(3)(A).   The

---

C.F.R. § 404.1520a(c)(3-4).

[14] The ALJ does not discuss or mention Dr. Miranda's treatment records in her decision.   *See generally* Tr. 130-141.

Social Security Regulations explain what is needed for a claimant to show an impairment:

> [A claimant's] impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms.

20 C.F.R. § 404.1508. The regulations clearly state that a claimant's statements alone "are not enough to establish that there is a physical or mental impairment." 20 C.F.R. § 404.1528. Medically acceptable laboratory diagnostic techniques to establish a medically determinable impairment include "chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests." *Id.*

At the second step in the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). "[A] diagnosis or a mere showing of a 'deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th

Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). Plaintiff bears the burden of establishing her impairments are severe and prevent the performance of her past relevant work.   *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Plaintiff argues substantial evidence does not support the ALJ's finding that her mental impairments were nonsevere.   Doc. 23 at 19.   Plaintiff argues her mental impairments are severe as they caused more than minimal limitation in her ability to perform basic work activities.   *Id.*   In support, Plaintiff notes Dr. Miranda diagnosed her with bipolar disorder and Debra Roggow, D.O., assessed Plaintiff's bipolar disorder, stating Plaintiff had limitations due to mental impairments and could only focus and understand simple instructions for about one-third of the work day.   *Id.* at 19-20.   Plaintiff also argues Dr. Kilchenstein's findings support that Plaintiff had severe mental impairments, although the ALJ did not have the benefit of reviewing those findings.   *Id.* at 20.   The Commissioner responds that Plaintiff failed to meet her burden to show she had a severe mental impairment and substantial evidence supports the ALJ's step two determination.   *Id.* at 22.   The Commissioner argues that the ALJ's ratings in the four criteria in paragraph B of the mental disorder listings equate to a non-severe mental impairment.   *Id.*   The objective medical evidence, according to the Commissioner, does not indicate Plaintiff's mental impairments would have affected her ability to work, and the opinion of the State agency consultant, Dr. Annis, supports the ALJ's determination. *Id.* at 23-24.

The Court recommends substantial evidence does not support the ALJ's severity determination.   The ALJ found Plaintiff had medically determinable mental impairments of bipolar disorder and anxiety that did not cause more than minimal limitations in her ability to perform basic mental work activities and were therefore nonsevere.   Tr. 133.   The ALJ evaluated Plaintiff's mental impairments under each of the four paragraph B criteria and found that she had only mild limitations in the four areas of functioning.   Tr. 133.   In evaluating her mental impairments, the ALJ relied mostly on Plaintiff's testimony and Dr. Annis' opinion that Plaintiff had medically determinable mental impairments, but only mild limitations in the relevant areas of functioning.   Tr. 133-34, *see* Tr. 118.   Dr. Annis did not examine Plaintiff, but the ALJ found the objective medical evidence supported Dr. Annis' opinion, and her opinion was consistent with the record as a whole.   Tr. 113-34.   As noted, however, the ALJ did not mention or discuss Dr. Miranda's treatment notes in her decision and did not have the benefit of Dr. Kilchenstein's notes.   Thus, the ALJ based her finding that Plaintiff's mental impairments were nonsevere on the opinion of the non-examining State agency consultant while failing to discuss the findings of the only examining psychologist, Dr. Miranda, and without the benefit of the findings of the only treating psychiatrist, Dr. Kilchenstein.

The Court recommends the case be remanded for consideration of the new evidence from Dr. Kilchenstein.   Thus, the Court recommends that on remand, the ALJ re-evaluate the severity of Plaintiff's mental impairments in light of all the medical evidence, including the new evidence from Dr. Kilchenstein.

c. *RFC determination*

When the ALJ finds that an impairment does not meet or equal a listed impairment at step three, the ALJ will proceed to step four to assess and make a finding regarding the claimant's RFC based on all the relevant medical and other evidence in the record of a claimant's ability to do work despite her limitations.   Tr. 15-16; 20 C.F.R. § 404.1520(e), 404.1545(a); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)).   For these purposes, relevant evidence in the record includes any medical history, daily activities, lay evidence and medical source statements.   20 C.F.R. § 404.1545(a).   The claimant's age, education and work experience, and whether she can return to her past relevant work also are considered in determining her RFC.   *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).   The ALJ "must consider all allegations of physical and mental limitations or restrictions," not just those determined to be severe.   SSR 96-8p, 1996 WL 374184, at *5; *see* 20 C.F.R. § 404.1545(a)(2); *Gibson v. Heckler*, 779 F.2d 619, 622-23 (11th Cir. 1986).   The ALJ is required to consider the combined effects of a claimant's alleged impairments and make specific, well-articulated findings as to the effect of the impairments and whether they result in disability.   *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) (citing *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984)).

Here, the ALJ found Plaintiff had the RFC to perform light work with certain limitations:

> The claimant has no limitation in balancing, but can occasionally kneel, stoop, crouch, crawl, and climb ramps and stairs.   She may never climb

ladders, ropes, or scaffolds.   She should avoid workplace hazards such as unprotected heights and dangerous, moving machinery, as well as concentrated exposure to vibration.   She can occasionally reach overhead with the dominant, right upper extremity.   Due to the combination of her symptoms and medication side effects, the claimant is limited to understanding, remembering, and carrying out simple and routine tasks.

Tr. 135.

Plaintiff challenges the ALJ's RFC determination regarding (1) her physical impairments and (2) the finding that Plaintiff could perform light work rather than sedentary work, arguing that the ALJ "improperly evaded" the grid rules by finding Plaintiff could perform light work.   Doc. 23 at 31, 36.   The Court will address each.

### i.   Physical limitations

Plaintiff argues substantial evidence does not support the ALJ's RFC determination because the ALJ failed to include restrictions on reaching in front and laterally with her right upper extremity as found by the State agency medical consultant, Thomas Bixler, M.D.   Doc. 23 at 36-37.   The Commissioner responds the ALJ properly considered Dr. Bixler's opinion in assessing Plaintiff's RFC and that "simply because the ALJ gave some weight to Dr. Bixler's opinion does not mean the ALJ was required to adopt Dr. Bixler's opinion verbatim[.]"   *Id.* at 38.

Dr. Bixler completed his disability evaluation of Plaintiff on December 5, 2015. Tr. 114-23.   Dr. Bixler found Plaintiff's right shoulder revealed tendinosis and mild degenerative arthrosis of the AC joint in March 2015, and in October 2015 Plaintiff displayed "5/5 strength in all four extremities" and normal range of motion in all extremities.   Tr. 117.   As to Plaintiff's RFC, Dr. Bixler opined that Plaintiff could

perform medium work; sit, stand and/or walk for six hours in an eight-hour work day; perform unlimited pushing/pulling except for lifting and/or carrying; perform unlimited handling, fingering, and feeling; and perform limited reach in front and/or laterally and overhead with the right upper extremity.   Tr. 121-22.

The Court recommends substantial evidence supports the physical limitations portion of the ALJ's RFC determination.   The ALJ considered the opinions and treatment notes of multiple examining and non-examining physicians in determining Plaintiff's RFC, including Dr. Bixler's.   *See* Tr. 138.   The ALJ gave Dr. Bixler's opinion "some weight" and found that his opinion supported further limiting Plaintiff's restrictions.   *Id.*   The ALJ did not adopt each limitation Dr. Bixler suggested but considered his opinion with the rest of the medical evidence.   The Court recommends, however, that the ALJ be directed to re-evaluate Plaintiff's RFC on remand, including Plaintiff's mental RFC limitations,[15] in light of the new evidence discussed above.

### ii. Ability to perform light work

Next, Plaintiff argues the ALJ "improperly evaded the grid rules in finding that Plaintiff could perform light work."   Doc. 23 at 31.   Plaintiff notes that Grid Rule 201.14 provides that a person who is closely approaching advanced age, is a high school graduate or more, had skilled or semiskilled work experience, and is limited to sedentary work, is disabled.   *Id.* at 32.   Plaintiff argues the ALJ evaded Grid Rule

---

[15] Plaintiff does not raise any argument related to the mental limitations portion of the ALJ's RFC assessment.

201.14 by finding that Plaintiff was able to perform light work "despite the evidence of her physical impairments[.]"   *Id.* at 33.   The Commissioner responds that Grid Rule 201.14 did not apply to Plaintiff's case, and substantial evidence supports the ALJ's assessment of Plaintiff's RFC.   *Id.*   The Commissioner argues that because Plaintiff had postural, environmental and mental limitations, the ALJ could not rely solely on the Grid Rule and properly relied on the VE's testimony to determine that Plaintiff could perform other work.   *Id.* at 36.

In determining Plaintiff's RFC, the ALJ thoroughly discussed Plaintiff's alleged physical impairments and relevant medical records.   *See* Tr. 135-38. Further, because the ALJ found Plaintiff could perform light work, she could not rely on Grid Rule 201.14 to direct a finding of disabled or not disabled, and there is no indication she made her finding to improperly "evade" the rule.   *See Heckler v. Campbell*, 461 U.S. 458, 462 n.5 (1983).   Because the ALJ did not have the benefit of Dr. Kilchenstein's treatment notes in determining Plaintiff's mental RFC limitations, however, and because she did not discuss or analyze Plaintiff's mental impairments in her RFC determination, the Court recommends the case be remanded for the ALJ to re-evaluate Plaintiff's RFC.

### d.   Step five determination

At step five of the sequential evaluation process, the burden shifts to the Commissioner to produce evidence that there is other work available in significant numbers in the national economy that the claimant can perform given her RFC. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Hale v. Brown*, 831 F.2d 1007,

1011 (11th Cir. 1987).   If the Commissioner can produce evidence of jobs available in significant numbers in the national economy that Plaintiff can perform, the burden shifts back to Plaintiff to prove she is unable to perform the jobs identified by the Commissioner.   *See Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001) (citing *Jones*, 190 F.3d at 1228).

The ALJ must consider the claimant's RFC, age, education and work experience to determine whether the claimant "can make an adjustment to other work."   20 C.F.R. § 404.1520(a)(4)(v), (g).   In making this determination, "the ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence."   *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).   The ALJ is permitted to consider the Dictionary of Occupational Titles ("DOT"), which is published by the Department of Labor.   SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000); *see* DOT, Occupational Definitions (4th ed., rev. 1991).   The ALJ also is authorized to consider the testimony of a VE as a source of occupational evidence.   SSR 00-4p, 2000 WL 1898704.   "[I]n order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."   *Phillips*, 357 F.3d at 1240 n.7 (quoting *Jones*, 190 F.3d at 1229).   The ALJ has an affirmative duty to "ask about any possible conflict between [the VE's testimony] and information provided in the DOT."   SSR 00-4p, 2000 WL 1898704.

Work exists in the national economy if it exists in significant numbers either in the region where Plaintiff lives or in several regions of the country, regardless of

whether work exists in Plaintiff's immediate geographical area, specific job vacancies exist, or Plaintiff would be hired if she applied.   *See Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933-35 (11th Cir. 2015) (citations omitted).   As to what constitutes a "significant number" in this context, the Eleventh Circuit has not fashioned a bright line rule.   As the court recently noted:

> This Court has never held that a minimum numerical count of jobs must be identified in order to constitute work that "exists in significant numbers" under the statute and regulations. We have concluded, however, that the "appropriate focus under the regulation is the national economy," not the local economy in which the claimant lives.

*Id.* at 934 (quoting *Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987)).

Here, based on the ALJ's hypothetical, the VE testified Plaintiff could not perform her past work as a massage therapist but could perform three light, unskilled jobs with an SVP of 2: "housekeeping cleaner, DOT 323.687-014," with approximately 300,000 jobs available in the national economy; "folder, DOT 789.687-066," with approximately 50,000 jobs available in the national economy; and "packager, DOT 559.687-074," with approximately 200,000 jobs available in the national economy. Tr. 53-54.   The VE testified that he derived his job number estimates by using software including *Job Browser Pro* and *Oasis*, both by *SkillTRAN*, reviewing Bureau of Labor statistics, county business pattern information, and state employment agency information, and by canvassing on his own.   Tr. 57.   Plaintiff's counsel cross-examined the VE about the estimated job numbers in the national economy:

> [ATTY]:   And in terms of for example the numbers for the housekeeper, is that for a statistical group of jobs, the numbers that you've giving [sic] meaning it couldn't contain more than one employment title?

| [VE]: | That particular job, well, really the three jobs I gave, all I've given, the cleaner, the folder, the packager, those are all specific to this one DOT number, not any kind of OES or other type of things. |
|---|---|
| [ATTY]: | And is there – do some of the numbers that, for example, the Bureau of Labor Statistics, does that sometimes include part time jobs as well as full time jobs? |
| [VE]: | It does but I've filtered that out based on percentage of part time versus full time jobs, and also Job Browser Pro does that too.   They filter out part time jobs. |
| [ATTY]: | Okay.   And the last question I'll ask.   I really ask this of a lot of vocational witnesses, and it's mostly because I'm curious but a lot of these jobs for the reasoning level, have R-two, at least a couple of them I think, probably the packager.   Some might be R-one, but in the DOT, when you look at these definitions for those, it talks about – it actually mentions, you know, detailed or complex instructions.   Do you see any conflict in the DOT with those descriptions for R-one and R-two, and then along with a restriction for simple, routine, repetitive work, or SVP 2 work? |
| [VE]: | Excuse me.   I really don't.   The reasoning level two, that mentions detailed – it does not mention complex.   And I don't – I think that simple, repetitive jobs do fall within that category. |

Tr. 57-58.

The ALJ relied on the VE's testimony to find there were jobs in significant numbers in the national economy Plaintiff could perform and to determine the VE's

testimony was consistent with the DOT.  Tr. 140.  The ALJ overruled Plaintiff's

counsel's objection[16] to the VE's qualifications and testimony:

> The claimant's representative objected to the vocational expert's qualifications and testimony, stating that there was no reliable, reproducible method to calculate the number of jobs available nationally (Exhibit 11E).  This objection is overruled.  A sufficient basis for vocational expert testimony can be professional knowledge and experience, as well as reliance on job information available from various government publications or other publications the Social Security Administration takes notice of (20 CFR 404.1560, 1566).  The undersigned acknowledges the vocational expert has training and qualifications in vocational rehabilitation, and the vocational expert is not a statistician and does not count job numbers for the Bureau of Labor Statistics (Exhibit 10E).  However, the vocational expert does not need to be a statistician to provide reliable testimony in this case.

Tr. 140.

Plaintiff argues substantial evidence does not support the ALJ's finding that

jobs exist in significant numbers that Plaintiff could perform because the VE's

estimates of job numbers "differ dramatically from other estimates . . . and most of

the other jobs in the Occupational Employment Statistics ("OES") groups containing

the jobs cited by the VE exceed Plaintiff's RFC."  Doc. 23 at 25.  Plaintiff notes the

VE testified he came up with his job numbers using two software programs from

*SkillTRAN* (*Job Browser Pro* and *Oasis*), Bureau of Labor Statistics information,

county business pattern information, and by canvassing through the State agency

---

[16] Plaintiff objected to the VE's qualifications and testimony in her pre-hearing memorandum and renewed her objection at the hearing.  Tr. 291-92, 52.  Plaintiff's objected to the VE's qualifications because the Commissioner has not defined what qualifications a VE must have.  Tr. 292, 52.  Plaintiff's objection to the testimony was based on the Commissioner requiring VEs to rely on the DOT, "which hasn't been updated in almost 25 years."  Tr. 52; *see* Tr. 292.

and on his own. *Id.* at 25-26. Plaintiff argues the record contains dramatically different estimates of job numbers across these different sources and the VE provided job numbers that were disproportionate to the number of job titles within the OES groups, most of which exceed Plaintiff's RFC.[17] *Id.* at 26-27. Thus, Plaintiff argues the VE did not provide substantial evidence on which the ALJ could base her determination of significant job numbers. *Id.* at 27.

The Commissioner responds the ALJ properly relied on the VE's testimony to conclude Plaintiff could perform other work and was not disabled. *Id.* at 28. The Commissioner argues the VE's testimony itself is substantial evidence supporting the ALJ's finding that Plaintiff could perform jobs existing in significant numbers in the national economy. *Id.* at 29. Finally, the Commissioner argues the number of jobs identified by the VE is well above numbers the Eleventh Circuit has found sufficient and that the VE's testimony regarding his analysis was sufficient to support the ALJ's findings. *Id.* at 30.

The Court recommends the ALJ properly relied on the VE's testimony to find a significant number of jobs in the national economy. In the Eleventh Circuit, a VE may rely on his knowledge and expertise without producing detailed reports or statistics in support of his testimony. *See Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010); *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012). Here, the VE testified that he used software like *Job Browser Pro* and

---

[17] The Joint Memorandum also attaches print-outs from *Job Browser Pro* to illustrate Plaintiff's point. *See* Docs. 23-1–23-6.

*Oasis*, as well as Bureau of Labor Statistics and county business pattern information, to formulate his estimates.   Tr. 57.   In addition, the VE testified he canvassed on his own to gather job numbers information, he made reductions based on his knowledge and expertise to account for part-time positions in OES groups, and the jobs he identified are each specific to one DOT code and not applicable to other jobs in a given OES group.   Tr. 56-57.   Thus, the Court recommends the VE's testimony provided substantial evidence on which the ALJ could base her finding.   *See Davis v. Berryhill*, No. 17-cv-293-N, 2018 WL 2208432 (S.D. Ala. May 14, 2018).   Because the Court recommends the case be remanded for consideration of new evidence, however, and that evidence may bear on Plaintiff's RFC, the Court recommends the Commissioner be directed to re-evaluate the step five determination as necessary.

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1.    The decision of the Commissioner be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for the Commissioner to:

>     a.  Consider the new evidence submitted from Plaintiff's treating psychiatrist Dr. Kilchenstein;
>
>     b.  Re-evaluate the severity of Plaintiff's mental impairments;
>
>     c.  Re-evaluate Plaintiff's RFC in light of all the evidence in the record including the new evidence;
>
>     d.  Re-evaluate whether there are jobs available in significant numbers that Plaintiff can perform given her RFC; and

e.  Make any other determinations consistent with this Report and Recommendation, or in the interests of justice.

2.     The Clerk be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of Plaintiff Renee Keene, and close the file.

**DONE** and **ENTERED** in Fort Myers, Florida on this 7th day of January, 2019.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record